N. M. SELLERS and Gladys Sellers, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13858.

United States Court of Appeals,
Ninth Circuit.

Jan. 4, 1955.

Leon De Fremery, W. T. Fitzgerald, Frank Latcham, Clarence E. Musto, San Francisco, Cal., for appellants.

H. Brian Holland, Asst. Atty. Gen., Elmer J. Kelsey, Ellis N. Slack, Morton K. Rothschild, Sp. Assts. to Atty. Gen., Charles W. Davis, Chief Counsel, Int. Rev. Service, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

Petitioners, husband and wife, each sought a review of decisions of the tax court assessing each for the tax years 1944 and 1945 with one half the income of a partnership of the two petitioners in a Coca Cola bottling and selling enterprise owned by the partners. This court, on the stipulation of the parties, consolidated the petitions, the issues tendered in each being the same.

The petitioners contend that the partnership instead of being between the husband and wife was a four-party family partnership consisting in addition to the petitioners their two children, a son Jack Sellers, 24 years of age in 1944 and a daughter Virginia Sellers, 19 years of age in 1944.

It is nowhere contended that the parents made a gift to each of the children of a quarter interest of their Coca Cola business. They thus avoided a large gift tax on a gift of a quarter each of a very large profit-earning enterprise, taken over from a corporation, the Coca Cola Bottling Co. of Sacramento, Ltd., in which the parents owned 96.4% of the stock. Their contention is that each child being of a contractual age, contracted for each to assume a quarter interest in the assets and liabilities of the family partnership.

The business, when operated by the corporation, had been a highly profitable one. That the partnership business had great value is apparent from the fact that its net earnings for its first 11 months' business of 1944 amounted to $98,458.74.

The father, at the beginning of the partnership procured from the corporation for the partnership assets structures, machinery, supplies and inventory used in bottling and the right to bottle and sell Coca Cola in a large area of the Sacramento Valley in California. These were purchased by the giving of two partnership notes. One in the amount of $32,330.46, payable in one year, the partnership paid off by July 1, 1944. The other for $138,565.55 payable in ten annual instalments of $13,855.00 the partnership had paid off to the extent of $38,565 by November 30, 1944, the end of the partnership's first fiscal year.

The tax court found "that the parties did not intend on or about January 1, 1944, to join with their children, Jack and Virginia, in the then present conduct of a business in good faith and with a business purpose, and that the children did not have that intention on or about January 1, 1944; that during the period from January 1, 1944, until November 30, 1945, at least, Jack and Virginia

Sellers were not bona fide members of the partnership; and that they were not bona fide members of the partnership during the calendar years 1944 and 1945." and held "Upon all of the evidence, we cannot find as a fact that there was a present intent on the part of N. M. and Gladys Sellers (or on the part of the children) to presently operate the business as a genuine partnership with their children during 1944 and 1945, and it is held that Jack and Virginia were not bona fide partners during 1944 and 1945. * * *"

The question before us is whether the Tax Court's holding that the family partnership was not entered into in good faith and for business purposes is clearly erroneous.[1] In this connection the petitioners do not disagree with the respondent's contention in its brief that the Tax Court was entitled to disbelieve the testimony of any of the members of the family, all four of whom testified.

The test as to "good faith" and a business purpose is stated by the Supreme Court in Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, at page 742, 69 S.Ct. 1210, at page 1214, 93 L. Ed. 1659, to be "whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

On the crucial issue of the bona fides of the partnership there was no testimony by disinterested witnesses. The evidence shows that the partnership was launched with $24,000 of its assets in cash which was given by the parent Sellers being drawn from the parents' joint banking account. The children were each credited with a $6,000 capital

contribution to the partnership. No contention is made that the parents made a gift of any part of this money to the children. Two notes, each in the sum of $6,000 and bearing interest *at the rate of but two per cent*, were given by the children to their father. As stated above substantial assets including a sizable part of the long profitable corporate going business were acquired by the partnership from the corporation, which was nearly wholly owned by the parent Sellers, by giving partnership notes to the corporation.

Even assuming that the two percent notes to the father and his contribution of $6,000 for each of the children to the capital of the family partnership had the validity which we hold it does not, such a contribution was an immediate equal enhancement of the children's interest in the partnership. In addition, they received *for nothing* a quarter interest in a highly profitable going business established for many years, which in its first year created for each child a profit of $20,843.68. Here is clearly not a business purpose but action of mere family affection and regard.

It is contended that the contribution of the money by the father on behalf of his children in return for their notes constituted a contribution of vital capital to the partnership and this view is strengthened, it is contended, because the children had net assets in the form of real property upon which a warehouse had been constructed in excess of the children's liability on the notes. This property had been given to the children by the parents on November 14, 1942, while the formation of a family partnership was being discussed.

The tax court well could doubt that the existence of this property actually strengthens petitioners' contention, in view of the fact that the property was subject to a heavy mortgage placed upon it by the parent Sellers when they owned the property. On April 11, 1947, the children paid their notes, having received

1. Harkness v. Commissioner of Internal Revenue, 9 Cir., 193 F.2d 655, 658.

partnership checks in the sums of their respective indebtedness the previous day.

While the absence of a contribution of original capital is not conclusive, it is a circumstance to be considered when determining whether a bona fide partnership has been established. Commissioner of Internal Revenue v. Culbertson, supra; Harkness v. Commissioner of Internal Revenue, 9 Cir., 193 F. 2d 655. The tax court was justified in finding that no original capital flowed from the children into the family partnership.

Jack Sellers contributed no services to the partnership in the 1944 fiscal year and worked for the partnership only one month in the 1945 fiscal year after his discharge from the armed forces. Virginia worked part-time in minor jobs for the partnership for four months in the 1944 period and for two months in the 1945 period. No special talent or prior experience other than for such occasional minor temporary work was shown to be possessed by the children. By the terms of the partnership agreement the children were to devote "only such time * * * as their other interests will reasonably permit". The son, Jack, was in the service and stationed away from Sacramento in 1944 and in 1945 until October. Early in 1944, Virginia married an Air Force officer and thereafter traveled about with her husband until the couple returned to Sacramento in 1946. Petitioners have failed to show that in the years involved the services of their children made any substantial contribution to the earnings of the partnership. None was contributed to its management.

Paragraph three of the partnership agreement provided that the partnership should be under the management of N. M. Sellers and his wife as general managers; that all questions of policy and all matters otherwise involved in the conduct of the firm business should be decided by N. M. Sellers and Gladys Sellers; and that N. M. Sellers should devote full time to the affairs of the partnership. In 1944 only 11% of Jack Sellers' purported share of the profits and less than 7% of Virginia Sellers' alleged share were withdrawn. Of the over $3,400 (part of which was listed as salary) debited by the partnership against Jack's account in 1944 only $1,000 was paid directly to him; the balance of the checks debited to his account were invested in his name or used to pay income tax, neither by Jack's personal action. In 1945 only $1,800 of $13,262 was paid directly to Jack. An analysis of the amounts debited to Virginia reveal the same pattern. Part of the funds so invested were invested in War Bonds by the father, because, as Jack testified, "* * * he [the father] said he would need [them] when I got out of the service". There was no evidence that the children ever instructed their father or the responsible employee in the family partnership to invest their money as it was invested or in any other way. From all these circumstances the tax court could have inferred that the father controlled the distribution of funds to the children and the use of those funds.

From a consideration of all these factors it is apparent that the tax court was justified in concluding that the children were not bona fide members of this family partnership and that it was not attempted to be formed in good faith and for a business purpose. To have decided otherwise would have been to violate the first principle of income taxation: that income must be taxed to him who earns it. Commissioner of Internal Revenue v. Culbertson, supra; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731.

The decision of the tax court that the family partnership so lacked good faith and a business purpose is affirmed and the relief sought by the review is denied.